# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| AUTOMATED PACKAGING SYSTEMS, INC., | ) | CASE NO. 5:14-cv-2022 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER OF TRANSFER |
| FREE-FLOW PACKAGING INTERNATIONAL, INC., | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

Before the Court is the motion of defendant Free-Flow Packaging International, Inc. ("FPI") to dismiss the amended complaint. (Doc. No. 73 ["Mot."].) Plaintiff Automated Packaging Systems, Inc. ("APS") opposes the motion (Doc. No. 76 ["Opp'n"]), and FPI has replied. (Doc. No. 79 ["Reply"].) The parties have filed numerous notices of supplementary authority and responses thereto in support of their respective positions on FPI's motion. (*See* Doc. Nos. 82-87, 93-96, 98-99.) On January 10, 2018, the Court held a hearing on the motion, and, at the conclusion of the hearing, it took the matter under advisement.

## I. BACKGROUND

APS is an Ohio corporation, with its principle place of business located in Streetsboro, Ohio, and is a "world leader in designing and manufacturing flexible bag packaging systems[.]" (Doc. No. 61 (Amended Complaint ["FAC"]) ¶ 2.) APS holds the patents to numerous inventions involving "webs used in . . . filling empty spaces in boxes" to facilitate the shipment of packages,

including the six patents that are at issue in this action. (*Id.* ¶ 1.) FPI is a Delaware corporation, with its principle place of business in Freemont, California. (*Id.* ¶ 3.) FPI also "makes [and] sells . . . webs or pouches used for filling empty spaces in boxes and processes for inflating such webs or pouches." (*Id.*)

On September 11, 2014, APS brought suit against FPI in this judicial district, alleging patent infringement and seeking injunctive and monetary relief. (Doc. No. 1 (Complaint ["Compl."]).) It represented both that "[v]enue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b)[,]" and that FPI "regularly solicits business and maintains a persistent course of conduct by conducting business in the Northern District of Ohio." (Compl. ¶¶ 7, 9.) APS answered the complaint and filed a counterclaim seeking declaratory judgment as to non-infringement and invalidity. (Doc. No. 11 (Answer).) In its answer, FPI "admit[ted] that venue is proper in this judicial district." (*Id.* ¶ 9.)[1]

The Court set dates and deadlines to govern the case, which it modified on several occasions at the request of the parties, and issued a protective order to facilitate discovery, all while the parties began the claim construction process. On January 28, 2016, APS moved to stay proceedings pending *inter partes* review. (Doc. No. 37.) FPI opposed a stay, and the Court referred the matter to the magistrate judge. After the matter was briefed, the magistrate judge granted the stay as of April 15, 2016. (Doc. Nos. 51, 53.) Following the rulings by the Patent and Trademark Office ("PTO") on *inter partes* review, and the denial by the PTO of the request for reconsideration, the Court lifted the stay on January 13, 2017. (Minutes, dated 1/13/2017.)

---

[1] During the course of this litigation, FPI pleaded two other allegations regarding venue. In its amended answer, filed May 4, 2015, FPI again stated that it believed that venue was proper in this judicial district. (Doc. No. 15 (Amended Answer) ¶ 9.) On March 17, 2017, FPI filed its answer to the FAC, and averred, once again, that venue was appropriate in this judicial district. (Doc. No. 65 (Answer to FAC) ¶ 9.)

On June 23, 2017, FPI filed the present motion to dismiss. In support of the motion, FPI maintained that the Supreme Court's May 22, 2017 ruling in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 197 L. Ed. 2d 816 (2017) rendered venue improper in this judicial district. (Mot. at 2706.[2]) Based upon the fact that FPI was incorporated in Delaware and had a "regular and established place of business" in Fremont, California, it suggested that the case must either be dismissed without prejudice or transferred to the Northern District of California. (*Id*. at 2715.) At the request of the parties, and within two weeks of the filing of the motion, the Court conducted a telephonic conference with counsel to discuss the motion and a potential discovery dispute identified by the parties. During the conference, the Court set a briefing schedule for the motion and proposed a mechanism for resolving the discovery dispute. (Minutes, dated 7/07/2017.) The Court further instructed the parties to continue with claim construction litigation, inasmuch as the parties would have to prepare for claim construction regardless of the venue in which the action was ultimately litigated.

At the time of the telephonic conference, a second action involving these same parties was pending in California. In March 2017, FPI commenced a patent infringement action against APS in the United States District Court for the Northern District of California. In that action, FPI alleged that APS had infringed upon several patents relating to inventions similar to those at issue in the present action. On August 29, 2017, and upon the heels of the *TC Heartland* ruling, the California court granted APS' motion to dismiss for improper venue, as APS did not "reside"

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

in the Northern District of California for purposes of 28 U.S.C. § 1400(b). *See Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*, Case No. 3:17-cv-0183-SK, 2017 WL 4155347 (N.D. Cal. Aug. 29, 2017). On that say day (August 29, 2017), FPI commenced a similar action against APS in the Central District of California. A motion for a preliminary injunction, a motion to dismiss, and a motion to transfer followed. On November 2, 2017, the Central District of California entered an order transferring the action to the Northern District of Ohio pursuant to 28 U.S.C. § 1404(a). This transferred action is now on the docket of the undersigned, as the action is related to this lawsuit filed by APS. *See Free-Flow Packaging Int'l, Inc. v. Automated Packaging Sys., Inc.*, Case No. 5:17-cv-2318-SL (Doc. No. 104 (Civil Minutes Order) at 1995; Doc. No. 109 (Order of Reassignment).)

On November 22, 2017, the Court conducted a telephonic status conference with counsel to discuss whether FPI wished to continue to prosecute the pending motion to dismiss, now that the California action was also pending in this Court. Counsel for FPI advised the Court that defendant still desired the Court to rule on its motion to dismiss. (Minutes, dated 11/22/2017.)

## II. Patent Venue and Waiver Law

It would be a considerable understatement to suggest that the legal landscape surrounding the issues of venue and waiver in patent cases has been in a state of flux for the last several months. The Court begins with what remains unchanged. The patent venue statute, 28 U.S.C. § 1400(b), provides: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Because the venue requirement is regarded as a "privilege" afforded to defendants, the privilege may be surrendered "by failure to assert [an

objection] seasonably, by formal submission in a cause, or by submission through conduct." *Neirbo Co. v. Bethlehem Corp*., 308 U.S. 165, 168, 60 S. Ct. 153, 84 L. Ed. 153 (1939) (citation omitted); *see also* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to the venue.").

A motion to dismiss for improper venue is governed by Fed. R. Civ. P. 12(b)(3). A Rule 12(b)(3) motion must be raised either in a motion made before responsive pleading or as part of a responsive pleading. Fed. R. Civ. P. 12(b), 12(h)(1). Otherwise, the defense is waived, unless the defense was not available at the time a motion to dismiss or responsive pleading is filed. *See* Fed. R. Civ. P. 12(h)(1). The burden of establishing venue falls on the plaintiff, but the court draws all reasonable inferences and resolves all factual disputes in the plaintiff's favor. *JPW Indus., Inc. v. Olympia Tools Int'l, Inc.*, No. 3:16-cv-3153-JPM, 2017 WL 4512501, at *2 (M.D. Tenn. Oct. 10, 2017) (citations omitted); *see Stuebing Automatic Mach. Co. v. Gavronsky*, No. 1:16-CV-576, 2017 WL 3187049, at *3 (S.D. Ohio June 12, 2017) (quoting *Centerville ALF, Inc. v. Balanced Care Corp*., 197 F. Supp. 2d 1039, 1046 (S.D. Ohio 2002)); *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002) (citations omitted) (collecting cases).

As set forth above, in May 2017, the Supreme Court issued its decision in *TC Heartland*. That decision affirmed the 1957 decision in *Fourco Glass Co. v. Transmirra Prods*. Corp., 353 U.S. 222, 226, 77 S. Ct. 787, 1 L. Ed. 2d 786 (1957), and rejected the Federal Circuit's 1990 decision in *VE Holding Corp. v. Johnson Gas Appliance Co*., 917 F.2d 1574 (1990), announcing that the patent venue statute (28 U.S.C. § 1400(b)), not the general venue statute (28 U.S.C. §

1391(c)), defines where a domestic corporation "resides."[3] Accordingly, following the ruling in *TC Heartland*, a "civil action for patent infringement" against a domestic corporation may be brought in the judicial district where the defendant [is incorporated], or where the defendant has committed acts of infringement and has a regular and established place of business. *TC Heartland*, 137 S. Ct. at 1521.

In the wake of the ruling in *TC Heartland*, district courts were flooded with motions challenging venue in patent cases. Two lines of cases quickly emerged addressing the question of whether the defendants bringing these motions had waived their right to challenge venue, or whether the waiver provision of Rule 12(h) was inapplicable because the venue argument was "unavailable" prior to *TC Heartland* based on the long-standing precedent of *VE Holding*. *See Maxchief Investments Ltd. v. Plastic Deve. Grp., LLC*, No. 3:16-cv-63, 2017 WL 3479504, at *3 (E.D. Tenn. Aug. 14, 2017) (collecting cases from both lines). On November 15, 2017, the Federal Circuit resolved the split of authority by holding that "*TC Heartland* changed the controlling law in the relevant sense: . . . before the [Supreme] Court decided *TC Heartland*, the venue defense now raised [by these defendants] was not 'available,' thus making the waiver rule of Rule 12(g)(2) and (h)(1)(A) inapplicable." *In re Micron Tech., Inc.*, 875 F.3d 1091, 1094 (Fed. Cir. 2017).

In reaching this conclusion, the Federal Circuit left open the possibility that a district

---

[3] In *Fourco*, the Supreme Court held that § 1400(b) was the sole and exclusive provision controlling venue in patent infringement actions, and that it was not to be supplemented by the provisions of the general venue statute, 28 U.S.C. § 1391(c). *Fourco*, 353 U.S. at 229. In 1988, however, Congress amended § 1391(c) to provide that "[f]or purposes of venue under this chapter," a defendant corporation shall be deemed "to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Two years later, the Federal Circuit in *VE Holding* held that the newly added phrase "[f]or purposes of venue under this chapter" was "exact and classic language of incorporation" and therefore § 1391(c) clearly applies to § 1400(b), and thus redefines the meaning of term 'resides' in that section." 917 F.2d at 1578-80. *VE Holding* remained controlling circuit law for more than 27 years.

court could still rely on its inherent powers and standard procedural devices to find a waiver of a venue challenge in order to facilitate "the just, speedy, and inexpensive resolution of disputes" in accordance with Rule 1 of the Supreme Court's decision in *Deitz v. Bouldin*, --U.S.--, 136 S. Ct. 1885, 195 L. Ed. 2d 161 (2016)." *Id*. at 1100. The Court warned that such authority "must be exercised with caution" and that such an exercise should "rest on sound determinations of untimeliness or consent ('submission,' in the language of *Nierbo*). But [it] generally [left] to future cases the task of elaborating on when such determinations may soundly be reached and what other considerations, if any, might be relevant within the *Dietz* framework." *Id*. at 1101. Accordingly, the court remanded the action before it to the district court to consider "such properly raised non-Rule 12(h)(1)(A) arguments that Micron has forfeited its venue defense and, if there are no such sound arguments, to consider the merits of venue under § 1400(b)." *Id*. at 1102.

### III. DISCUSSION

APS concedes that the Federal Circuit, in *Micron*, resolved the question of whether the defense to venue—that a corporation only "resides" in the place of its incorporation, for purposes of 28 U.S.C. § 1400(b)—was "available" prior to the Supreme Court's ruling in *TC Heartland*. (Doc. No. 94 at 5264.) Thus, APS has abandoned its waiver argument under Fed. R. Civ. P. 12(h)(1). (*Id*.) Nevertheless, it insists that there remain "several non-Rule 12 bases for finding waiver" under this Court's inherent powers. (*Id*. at 5265.) First, it notes that FPI has repeatedly admitted that venue was proper in this judicial district. (*Id*.) Second, APS highlights the fact that the parties "have been litigating this case for over three years and are nearly finished with *Markman* briefing." (*Id*. at 5266.) Third, APS references the recent transfer of the California case

to this Court and draws attention to Judge Fitzgerald's transfer order wherein he opined that "the parties would benefit if they both proceeded in the same court." (*Id.*, citing Civil Minutes Order at 2004.)

### A. Possible Waiver of Venue Argument as Untimely

Initially, APS argues that FPI's venue objection is still untimely because "on three separate occasions" FPI affirmatively admitted that venue was appropriate. These admissions, APS continues, are markedly different than those in *Micron* wherein the patent defendant merely omitted the venue argument from an early Rule 12(b) motion. (*Id.* at 5265.) APS also stresses that FPI still has not moved to amend its answer to challenge venue. (*Id.*)

APS' argument misses the mark. All of FPI's "admissions" regarding venue were made at a time when the objection it now asserts was unavailable. That was the gist of the Federal Circuit's holding in *Micron*. Functionally and practically, it makes no difference whether FPI remained silent or affirmatively conceded that venue was proper, as existing binding precedent from the Federal Circuit rendered any challenge to the validity of venue futile and effectively rendered FPI "admissions" regarding venue accurate under existing law. Either way, the fact remains that, given binding circuit precedent, there was no defense available until *after* the ruling in *TC Heartland*.

As such, it is important to focus on FPI's conduct "post-*TC Heartland*." *See, e.g., Intellectual Ventures*, 2017 WL 5630023, at *3 ("In light of this instruction in *Micron* [that the forfeiture inquiry should at least start with an examination of the 'time from which the defense becomes available to when it is asserted'], the Court begins by examining Defendants' conduct after *TC Heartland* was decided.") (quoting *In re Micron*, *supra*). Within one month of the *TC*

*Heartland* ruling, FPI moved to dismiss the complaint for want of venue. Under these circumstances, the Court finds that FPI did not unreasonably delay, or wait until it became "convenient or advantageous" for it to reap the benefits of the benefits of the Supreme Court ruling.[4] *Compare Intellectual Ventures II LLC v. FedEx Corp.*, 2:16-CV-0098-JRG, 2017 WL 5630023, at *3 (E.D. Tex. Nov. 22, 2017) (waiver where defendants waited until "a few days after their [*inter partes* review] petitions were denied and more than two months after *TC Heartland* was decided" to seek dismissal for improper venue); with *Valspar Corp. v. PPG Indus. Inc.*, No. 16-cv-1429 (SRN/SER), 2017 WL 3382063, at *4 (D. Minn. Aug. 4, 2017) (no waiver where defendant "applied to amend [the complaint and dismiss for improper venue] as soon as reasonably possible" within weeks of *TC Heartland* decisions); *Ironburg Inventions Ltd. v. Valve Corp.*, No. 1:15-CV-4219-TWT, 2017 WL 3307657, at *3 (N.D. Ga. Aug. 3, 2017) (no waiver for intentional delay where defendant filed its motion to transfer "a little over a month after *TC Heartland* was decided").

APS also posits that a finding of waiver is appropriate because of the length of time the case has been pending in this Court, coupled with the fact that the related California case was recently transferred to this Court. (Doc. No. 94 at 5266.) It notes that the Court is "already familiar with the parties and technology" and underscores the fact that Judge Fitzgerald

---

[4]It is true that in many of the cases where district courts considered venue in light of *TC Heartland*, the patent defendants paired the venue motion with a motion to amend to deny the validity of venue. *See, e.g, Treehouse Avatar LLC v. Valve Corp.*, No. 15-427-JFB-SRF, 2017 WL 5564153 (D. Del. Nov. 20, 2017); *Intellectual Ventures*, 2017 WL 5630023; *Ironburg Inventions*, 2017 WL 3307657. APS suggests that FPI's failure to couple its Rule 12(b) motion with a Rule 15 motion is fatal to its request to dismiss/transfer. (Doc. No. 94 at 5266 ["Unless FPI obtains leave to amend its answer, a ruling in FPI's favor on its motion to dismiss would be directly at odds with FPI's binding judicial admission in its answer."]) The Court disagrees. While Rule 12(b) requires every defense to a claim to be raised in a responsive pleading if one is required, it specifically provides that a party may challenge venue via a motion. *See* Fed. R. Civ. P. 12(b)(3). Moreover, the Court could construe FPI's motion as implicitly also seeking leave to amend. *See generally Weigand v. Long Transp. Co.*, 25 F.R.D. 496, 497 n.2 (E.D. Pa. 1960) ("The motion to dismiss here [for improper venue] might be treated as a motion to file an amended answer.").

recognized that the parties would benefit from litigating both cases in the same forum. (*Id.*) However, while Judge Fitzgerald commented on the possible convenience of litigating in one forum, he also acknowledged that a cross-transfer of cases between forums would mean that both parties would be "defending themselves on their home turf[.]" (Civil Minutes Order at 2005.)

Further, although this case was filed in 2014, it was stayed for much of the time since its filing. It was not returned to active status until 2017. As a result, the case has not progressed past briefing on claim construction. The Court has yet to hold a *Markman* hearing and has not had the opportunity to address any dispositive motions or otherwise enter any rulings touching on the merits of the claims or the technology at issue in this case.  More to the point, the claim construction work the parties have engaged in to-date would have had to have been done in whatever forum the case was litigated, something that APS conceded when the Court set the briefing schedule on the pending motion and required the parties to continue with claim construction.[5] Consequently, the Court finds that APS cannot identify any prejudice from a transfer at this time. *See Precision Fabrics Grp., Inc. v. Tietex Int'l, Ltd.*, No. 1:13-cv-645, 1:14-CV-650, 2017 WL 5176355, at *10 (M.D.N.C. Nov. 7, 2017) (granting a transfer under *TC Heartland* where plaintiff had "yet to articulate any meaningful prejudice beyond the incurrence of administrative expenses related to a transfer" as "[a]ll pending pretrial motions address the scope of permissible trial evidence and would have been filed irrespective of the venue

---

[5] At the motion hearing, APS argued that FPI's tactical maneuvering is evident in the fact that FPI did not seek to stay claim construction briefing, hoping, instead, to gain a strategic advantage from differences between the districts in local patent rules relating to claim construction. Of course, given this Court's directive that claim construction briefing was to continue, the filing of a motion to stay would have been futile. Moreover, it is pure speculation that FPI could have obtained any strategic benefit from minor differences in district local rules or a particular judge's standing order. For example, at the hearing, APS' counsel noted that some judges in other jurisdiction limit the number of claim contentions to under 10, yet according to the briefing to date, FPI has only raised 9 disputed claims (and not the 19 claims APS' counsel suggested at the hearing). (*See* Doc. No. 91 (Opening Claim Construction), Doc. No. 100 (Response Brief).)

question").

Finally, as set forth above, this case is not on the eve of trial, and the Court finds that FPI did not unreasonably or strategically delay in bringing the motion to dismiss/transfer. On the contrary, the Court finds that FPT seasonably asserted its newly available defense to venue, and did not adopt a "wait-and-see" approach or otherwise "bypass[ an] opportunity to declare a desire for a different forum." *In re Micron*, 875 F.3d at 1102; *see, e.g., Treehouse Avatar LLC v. Valve Corp.*, No. 15-427-JFP-SRF, 2017 WL 5564153, at *3-4 (D. Del. Nov. 20, 2017) (transfer appropriate where trial was not scheduled to take place for more than a year before transfer was sought); *Ironburg Inventions*, 2017 WL 3307657, at *3 (patent action was not "on the eve of trial" where the court had held a *Markman* hearing [but had not issued a claim construction ruling], and the matter had not "reached the summary judgment stage"). Accordingly, the Court finds that FPI has not waived its right to challenge venue in this forum.

## B.  First Prong of § 1400(b): "resides"

Having concluded that FPI's venue challenge is timely, the Court must next determine whether venue is proper under § 1440(b). It is uncontested that FPI is incorporated in Delaware, and "[a] domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 137 S. Ct. at 1517. The first prong of the inquiry, therefore, is not met.

## C.  Second Prong of § 1440(b): "regular and established"

The Court must next consider whether FPI satisfies the second prong of § 1400(b), which requires the Court to determine whether FPI maintains a regular and established place of business in the Northern District of Ohio. Once again, recent precedent guides the Court's

analysis. On September 21, 2017, the Federal Circuit issued its decision in *In re Cray Inc*., 871 F.3d 1355 (Fed. Cir. 2017), wherein it provided instruction on how district courts should determine whether a defendant has a regular and established place of business in a particular district. Specifically, the court identified three requirements for satisfying the second prong of § 1400(b): (1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant. If any statutory requirement is not satisfied, venue fails under this prong. *Cray*, 871 F.3d at 1360. In determining whether venue is proper under this provision, the Federal Circuit advised that "no precise rule has been laid down and each depends on its facts." *Id*. at 1362.

From the briefs and evidence the parties submitted to the Court, the following facts are clear. FPI has two employees who currently reside in this judicial district, and one employee who lived in the district from 2002 until the end of 2014 and currently lives in Columbus, Ohio. A fourth employee periodically travels to this judicial district to provide technical support.

1. <u>FPI Employees in the District</u>

    *a. Kristi Nicholas*

Kristi Nicholas lives in this judicial district and holds the title of Territory Sales Manager, a title she has held since September 2015. (Doc. No. 73-2 (Declaration of Kristi Nicholas ["Nicholas Decl."]) ¶¶ 2, 4.) Her sales territory includes all of Ohio, western Pennsylvania, northern Kentucky, and West Virginia. (*Id*. ¶ 2.) She estimates that less than 25% of her work time is spent in this judicial district. (*Id*. ¶ 3.) She does not have an office in the district, and she occasionally performs some duties at home, but she does not take a tax deduction for a home office. (*Id*. ¶ 4.) She keeps a limited amount of product in her home for demonstration purposes

only, and the product is not used to satisfy customer sales requests. (*Id*. ¶ 5.) She only solicits business; she plays no role in sales transactions in this or any other district. (*Id*. ¶ 6.) The phone number on her business card lists a 650 area code that connects to a cell phone provided by FPI, and she answers the phone in her own name. (*Id*. ¶ 8.) The address listed on her business card is that of FPI's home office in Freemont, California. (*Id*. 9.) Her vehicle is provided by FPI, through a fleet service, but it does not bear the FPI logo (*id*. ¶ 10), and she stores no corporate files in her home. (*Id*. ¶ 11.)

### b. *Edward Burry*

Edward Burry also lives in the judicial district and has held the position of National Accounts Manager since April 2016. (Doc. No. 73-4 (Declaration of Edward Burry ["Burry Decl."]) ¶ 2.) He is responsible for accounts throughout the United States, and he estimates that less than 15% of his time is spent in the Northern District of Ohio. (*Id*. ¶ 3.) He does not have an office in northern Ohio, but he occasionally does work from his home. (*Id*. ¶ 4.) Like Ms. Nicholas, he keeps a limited amount of product in his home for demonstration purposes only, and it is not used to fill orders. (*Id*. ¶ 5.) The phone number on his business card is a 440[6] area code number that connects to the cell phone provided by FPI. At his request, FPI permitted him to use the phone number he had prior to his employment with FPI, and he answers the phone using only his own name. (*Id*. ¶ 8.) The address on his business cards is FPI's home address in Freemont, California. (*Id*. ¶ 9.) FPI did not supply him with a vehicle, and his personal car does not display the FPI logo. (*Id*. ¶ 10.) He also does not store any corporate files in his home (*Id*. 11.)

---

[6] The 440 area code is located within the Northern District of Ohio.

c. *Kevin Brogan*

Kevin Brogan currently lives in Columbus, Ohio, which is outside this judicial district. (Doc. No. 73-3 (Declaration of Kevin Brogan ["Brogan Decl."]) ¶ 2.) Prior to his move in December 2014, he resided in this judicial district. (*See id*. ¶ 2.) He holds the title of Eastern Regional Sales Manager for FPI, a position he has held since June 2015. (*Id*. ¶ 3.) Ohio is one of 21 states for which he is responsible. (*Id*.) He estimates that less than 5% of his time is spent in the Northern District of Ohio. (*Id*. ¶ 4.) He does not have an office in the Northern District of Ohio, but occasionally performs work at home outside this district, though he has never taken a home office tax deduction. (*Id*. ¶ 7.) He keeps a limited amount of product in his home to assist customers in understanding how FPI's products work. (*Id*. ¶ 8.) He has a 650 area phone number that connects to his cell phone, which was provided by FPI and Brogan answers using his own name. (*Id*. ¶ 13.) The address listed on his business card is FPI's Freemont, California home office. (*Id*. ¶ 14.) A fleet service supplies Brogan's car on behalf of FPI, and the car does not display the FPI logo. (*Id*. ¶ 15.)

d. *Dan Jones*

Dan Jones is a service technician for FPI who lives outside the judicial district in Johnstown, Ohio. (Doc. No. 79-5 (Deposition of Daniel Jones ["Jones Dep."]) at 3565, 3566.) His territory covers eastern Pennsylvania, northern Kentucky, West Virginia, and Ohio. (*Id*. at 3572.) Although 90% of his work time is spent providing preventative maintenance for FPI's customers, he does occasionally provide technical support for FPI employees. (*Id*. at 3569, 3571.) His business card lists an Illinois phone number and address, and he visits the Northern District of Ohio no more than 3 days per month. (*Id*. at 3568, 3570; Doc. No. 80-4 (Business

Card of Daniel Jones ["Jones Business Card"]) at 3599.).

        2.        Elements of "Regular and Established"

                *a.  physical place in the district*

The statute requires an actual "place" in the district, "*i.e.*, [a] building or a part of a building set apart for any purpose[,] or quarters of any kind' from which business is conducted." *Cray*, 871 F.3d at 1362 (quotation marks and citations omitted). "While the 'place' need not be a 'fixed physical presence in the sense of a formal office or store,' [*In re Cordis*, 769 F.2d 733, 737 (Fed. Cir. 1985)], there must still be a physical, geographical location in the district from which the business of the defendant is carried out." *Cray*, 871 F.3d at 1362. Accordingly, "[t]he statute thus cannot be read to refer merely to a virtual space or to electronic communications from one person to another." *Id*. In *Cray*, the Federal Circuit noted that, in its prior decision in *Cordis* wherein it found that employee homes constituted "place(s)" under § 1400(b), it relied on the fact that employees used their homes to store company literature and product like a "distribution center[]"and that the defendant company also engaged a secretarial service in the district to provide support services therein. *Id*. (citing *Cordis*, 769 at 735).

In this case, FPI does not rent, lease, own or control any buildings, building space, or real property in northern Ohio (Brogan Decl. ¶ 17.) FPI does not employ any company to provide any services—such as secretarial or mail service—in northern Ohio, and, as set forth above, the only technician responsible for the State of Ohio, Dan Jones, lives outside the district in the Columbus area. (*Id*. ¶¶ 10, 18.) None of the employees with ties to Ohio keep inventory in their homes for sale to customers, and while three of the employees keep a limited amount of product in their home for demonstrative purposes (one of whom currently resides outside of this district), "this

relatively limited practice does not provide sufficient support for a finding that these homes constitute [FPI's] physical place" in the Northern District of Ohio. *See, e.g., Regents of Univ. of Minnesota v. Gilead Sciences, Inc.*, No. 16-CV-2915 (SRN/HB), 2017 WL 4773150, at *5 (D. Minn. Oct. 20, 2017) (keeping limited quantities of company literature on hand did not convert employee homes into physical places of the employer in the district). Moreover, the only support service these employees receive comes from outside the district. These facts are insufficient to support a finding of a physical place in Northern District of Ohio, and, for this reason alone, venue is wanting in this judicial district.

b. *regular and established*

The second element requires a place of business in the judicial district to be regular and established. *Cray*, 871 F.3d at 1360. In *Cray*, the Federal Circuit taught that to be "regular" the business must operate in a "steady[,] uniform[,] orderly[, and] methodical manner." *Id.* at 1362 (quotation marks and citation omitted). "In other words, sporadic activity cannot create venue." *Id.* (citing *Phillips v. Baker*, 121 F.2d 752, 756 (9th Cir. 1941)). Consistent with this view, the second half of the second element—established—signifies permanence. *Id.* (citing *Phillips*, 121 F.2d at 756). As to this requirement, the Federal Circuit observed:

> Accordingly, while a business can certainly move its location, it must for a meaningful time period be stable, established. On the other hand, if an employee can move his or her home out of the district at his or her own instigation, without the approval of the defendant, that would cut against the employee's home being considered a place of the defendant.

*Id.* at 1363.

APS has failed to direct the Court to any evidence that would establish that Nicholas and Burry are required to live in this judicial district, and such a requirement would be inconsistent

with the fact that their sales territory covers a number of states. Moreover, the fact that Brogan moved his residence outside of this judicial district during his tenure with FPI clearly cuts against these employee homes serving as a permanent place of business for FPI.

c.   *the place of the defendant*

The third requirement for determining venue under § 1400(b) requires the place of business to be "the place of the defendant." *Cray*, 871 F.3d at 1363 (quoting 28 U.S.C. § 1400(b)). "As the statute indicates, it must be a place *of the defendant*, not solely a place of the defendant's employee. Employees change jobs. Thus, the defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own." *Id.* (emphasis in original). Important considerations for this last requirement "include whether the defendant owns or leases the place, whether the defendant exercises possession or control over the place, whether the defendant conditioned employment on the employee's continued residence in the district, whether materials are stored at a place in the district for distribution or sale, or whether the defendant holds out a place for its business in marketing materials." *Regents*, 2017 WL 4773150, at *6 (citing *Cray*, 871 F.3d at 1362-64 (further citations, including internal citations, omitted).

As was the case in *Cray*, FPI does not own, lease, or rent any property in this judicial district, and there is no evidence that FPI exercises any control over the residences of Nicholas and Burry, the only two employees still residing in the district. Nor is there any evidence that their employment is conditioned on their continued presence in this district.[7] Further, as set forth above, while small amounts of product are maintained in their homes, this product is not available for direct sale to customers.

---

[7] At the hearing, FPI's counsel represented that Nicholas and Burry are not required by FPI to live in the district.

Finally, there is no evidence that FPI has ever held out any of its employees' private homes in this district as its place of business. Defendant does not list any of these homes as its place of business on its website or in marketing or advertising literature. The address listed on the employees' business cards is that of the company's home office in Freemont, California, and the only employee to list on his business card a phone number within this judicial district, which he was permitted to do at his personal request, still answers his phone in his own—and not the company's—name. In fact, APS has not directed the Court to any evidence in the record that, if believed, would establish that FPI holds out its employees' private homes as its place of business.

Instead, APS stresses the number of customers Burry, Nichols, and Jones service in the district, and specifically points to the LinkedIn profile for Nicholas, wherein she identifies herself as having more than 500 clients in the Cleveland Area. (Opp'n at 2789, 2791.) This evidence misses the mark. The servicing of customers by an employee in the district, without a ratification by the employer of the employee's home as a place of business, is not enough to establish that the employee's home constitutes the *employer's* place of business.[8] *See Niazi v. St. Jude Med. S.C., Inc.*, No. 17-CV-183-JDP, 2017 WL 5159784, at *3 (W.D. Wis. Nov. 7, 2017) ("District courts that have applied § 1400(b) since *Cray* have similarly concluded that servicing

---

[8] Likewise, FPI's emphasis on the revenue generated by customers in this district is not relevant to the venue inquiry under § 1400(b), as "*Cray* emphasizes that defendant[] must maintain a permanent and continuous <u>place</u> in the district in question. *See Regents*, 2017 WL 4773150, at *5 ("The University's emphasis on financial performance [associated with the district] is misplaced.") (quoting *Cray, supra*) (emphasis in original). Additionally, FPI has come forward with evidence that most of its sales do not go through employees but, instead, are via distributors. (Reply at 3420, Ex. 4, Brogan Dep. at 3506-07 [FPI relies on distributors across the country to connect it with end users, with more than 99% of all sales coming through distributors].) While APS maintains that FPI has a close relationship with its distributors, this is still insufficient to establish that FPI has a regular and established business in the district, as any such physical presence of the distributor belongs to the distributor and not FPI. *See, e.g., CAO Lighting, Inc. v. Light Efficient Design*, No. 4:16-cv-482-DCN, 2017 WL 4556717, at *3 (D. Idaho Oct. 11, 2017) (presence of distributors in district could not be imputed to defendant for purposes of § 1400(b) venue).

18

customers in a particular district does not satisfy § 1440(b)—even if employees live in the district—if defendant 'does not hold out its employees' homes as the company's place of business.'") (quoting *Regents*, 2017 WL 4773150, at *6). Further, an employee's representations regarding her activity in the district are insufficient to establish that an employer has a regular and established place of business. "[T]he defendant must establish or ratify the place of business. It is not enough that the employee does so on his or her own." *Cray*, 871 F.3d at 1363.

APS observes that FPI provides its employees performing services in this judicial district with "everything they need to do their jobs[,]" including laptops, iPads, printer ink and paper, and cell phones. (Opp'n at 2800, citing Doc. No. 77-3 (Deposition of Kristi Nicholas ["Nicholas Dep."]) at 95-96).) However, the defendant in *Cray* provided similar items or reimbursements for such items, yet the Federal Circuit found this insufficient to satisfy the patent venue statute. *See Regents*, 2017 WL 4773150, at *7 (citing *Cray*, 871 F.3d at 1364).

At the hearing, APS also relied on FPI's "business model" wherein FPI, for the convenience of their customers, supplies its end use customers with FPI equipment to be used at the customer's facility. Citing to the "Equipment Use Agreement ("EUA") FPI enters into with its customers that governs the placement of such equipment at the customer's facility, counsel for APS drew out the following facts: (1) FPI retains ownership of the equipment, (2) once the customer selects the location for the equipment it cannot move the equipment without FPI's permission, and (3) FPI retains the right to access the equipment to provide maintenance and service. (*See* Doc. No. 77-15 [EUA].) Based upon these contractual provisions, APS insists that the existence of these machines at the customer's locations within this district means that FPI has a regular and established business in the district.

This rather creative argument does not satisfy the test set forth in *Cray* for the simple reason that the equipment in question is not a *place*. *Cray* makes clear that it must be a "*place*", noting that "there must still be a *physical, geographical location* in the district from which the business of the defendant is carried out."[9] *Cray*, 871 F.3d at 1362 (emphasis added). The fact that the equipment is moved onto the customer's property, and may be removed by FPI or relocated by the customer with FPI's permission, precludes any finding that this equipment could serve as a physical, geographical location for purposes of demonstrating that FPI has a regular and established place of business within the district.[10] Moreover, as set forth above, servicing a customer at the customer's facility cannot transform that facility into the patent defendant's place if the defendant does not hold such place out as its own. *See Niazi*, 2017 WL 5159784, at *3.

At best, the facts merely show that there are several physical locations within this district where FPI employees occasionally carry "on certain work for [their] employer. That is not the same as *Defendant* having a regular and established place of business in this District."

---

[9] APS relies on *Cordis* wherein the Federal Circuit found that the employees' use of their homes to store substantial amounts of inventory was important to its holding that a regular and established place of business existed in that district. *Cordis*, 769 F.2d at 735. Particularly important to that ruling was the value of the product, and the fact that it was stored in locations that served as conduit offices for the defendant. *Id.* Here, the equipment is stored at the customer's facility, at a location determined by the customer, and the purpose of the equipment is to assist the customer in carrying out its own business.

[10] At the hearing, the Court offered the analogy of vending machines, noting that the vending machines in the federal courthouse are owned by the vendor and placed in the building by agreement between the vendor and General Services Administration (GSA), the entity that owns the courthouse, and that the vendor is given access to the machines for purpose of stocking, maintaining, repairing, and collecting proceeds from product sales. APS' counsel agreed that, under his client's argument, the potato chip vendor may have, by virtue of these machines, a regular and established place of business in the federal courthouse. The Court cannot accept such a result, especially given the fact that the court in *Cray* was emphatic that Congress passed a venue statute specific to patent cases as a "restrictive measure" to limit venue beyond that permitted by the general venue statute or by concepts like personal jurisdiction. *Cray*, 871 F.3d at 1361 (quoting *Stonite Prods. Co. v. Melvin Lloyd Co*., 315 U.S. 561, 566, 62 S. Ct. 780, 86 L. Ed. 1026 (1942)). *Cray* specifically cautioned against the practice advocated for by APS. *Id.* ("Courts should be mindful of [the] history [of § 1400(b)] in applying the statute and be careful not to conflate showings that may be sufficient for other purposes, e.g., personal jurisdiction or the general venue statute, with the necessary showing to establish proper venue in patent cases.").

*BillingNetwork Patent, Inc. v. Modernizing Medicine, Inc.*, No. 17 C 5636, 2017 WL 5146008, at

*3 (N.D. Ill. Nov. 6, 2017) (citing *Cray*, 871 F.3d at 1365) ("The statute clearly requires that

venue be laid where the defendant has a regular and established place of business, not where the

defendant's employee owns a home in which he carries on some of the work that he does for the

defendant.") (quotation marks and citation omitted). The fact that there are also locations where

FPI customers utilize APS equipment to carry out the customers' work also falls well short of

establishing that FPI has a regular and established place of business in this district. Because FPI

does not reside in this judicial district and does not have a regular and established place of

business here, the Court must conclude that the Northern District of Ohio is not the proper venue

in which to adjudicate the patent infringement claims APS has asserted against FPI. *See* 28

U.S.C. § 1400(b).

D.    **Remedy Under 28 U.S.C. § 1406**

When a case is brought in an improper venue, the district court retains the discretion to

"dismiss, or if it be in the interest of justice, transfer [the] case to any district or division in which

it could have been brought." 28 U.S.C. § 1406(a). "However, transfer is 'generally considered to

be more in the "interest of justice" than dismissal and, therefore, doubts should be resolve in

favor of preserving the action, particularly where it appears that venue may be proper laid in the

proposed transferee district.'" *Simpson Performance Prods., Inc. v. NecksGen, Inc.*, No. 5:16-

CV-00153-RLV-DCK, 2017 WL 3616764, at *8 (quoting *Nat'l v. United States Gov't*, 512 F.

Supp. 121, 126-27 (S.D. Ohio 1981)). While FPI believes that dismissal is the appropriate

remedy, it suggests that, if the Court is inclined to transfer this case, it should transfer the case to

the Northern District of California. (Mot. at 2715.) It notes that it has a "regular and established

place of business" within that district, as it is headquartered in Freemont, California. (*Id.*) APS did not address the appropriateness of a transfer in its opposition brief.[11]

In light of the Federal Circuit's ruling in *Cray*, the Court finds that the case "could have been brought" in the Northern District of California because there is no dispute that FPI has a regular and established place of business in that district. Transferring the case there will serve the purpose of § 1406: to remove obstacles from the expeditious adjudication of cases and controversies on their merits. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962). Accordingly, the Court rules that the interests of justice support a transfer of this case there. (*See* Civil Minutes Order at 2005 [a transfer would result in the parties "defending themselves on their home turf"]).

## IV. CONCLUSION

For all of the foregoing reasons, FPI's motion for dismissal based on improper venue is granted in part. In the interest of justice, the case is transferred to the United States District Court for the Northern District of California.

**IT IS SO ORDERED**.

Dated: January 12, 2018

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

---

[11] In a footnote, APS requested that it be permitted to brief this issue at a later date. (Opp'n at 2804 n.1.) APS adopted this strategy at its peril. The time for briefing *all* issues relating to venue has passed. *See Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 43 F.3d 1054, 1058-59 (6th Cir. 1995) (concluding that an issue "drop[ped] in a footnote" but not "raised in either the state of issues or the argument sections" was "not properly raised"). The Court has the inherent power to manage the disposition of cases on its docket, including the briefing of legal issues, and the parties are not permitted to disregard briefing deadlines and address arguments at their own convenience. Moreover, even at oral argument, APS did not argue that transfer to the Northern District of California would be inappropriate under §§ 1440(b), 1406.